Peck, J.
The defense made by the present defendants, who are the sureties of Benjamin B. Barkalow, to a recovery upon the notes and mortgages is, that they were given in consideration of an agreement between said Benjamin and the plaintiffs, that they, the said plaintiffs, would stifle and suppress a criminal prosecution, to which the said Benjamin was then liable, for having executed and delivered to one Alexander Ingraham, the assignor of the plaintiffs, a fraudulent and fictitious warehouse receipt for a large quantity of corn, and obtained thereon a large sum of money, for which said notes were given.
The answers of the defendants are quite lengthy, and dwell. much upon threats alleged to have been made by the *472 plaintiffs to said Benjamin, of an impending prosecution, unless the money should be secured, and upon the repetition of those threats by Benjamin to his co-defendants and relatives, as an inducement to them to join in executing the mortgages; but they are not stated as a substantive ground of defense — a fraud practiced upon the defendants — but as evidence of, and an inducement to the alleged agreement to stifle the threatened prosecution. The court below, therefore, very properly held, that the defense disclosed by the answers, was an alleged agreement■ to compound a criminal prosecution, and not a charge of fraud or of duress per minas.
The reply substantially denies the agreement to compound a criminal prosecution; and also, that they procured said notes and mortgages, or either of them, by any threats to prosecute said Benjamin for a penitentiary offense, as alleged in said answers.
This brief reference to the pleadings shows, that the only point at issue between the parties was, whether the consideration, in whole or in part, of said notes and mortgages, was an agreement on the part of the plaintiffs to stifle a criminal prosecution, against Benjamin B. Barkalow. And no evidence would be competent, under such an issue, except such as legally tends, in some degree, to prove or disprove the making of such an agreement. And this brings us to consider the first and second errors assigned — which are,
First. That the court below erred in allowing the defendants below to give in evidence to the jury the statements of Benjamin B. Barkalow to the other defendants, made in the absence of the plaintiffs.
Second. That the court erred in charging the jury that the aforesaid statements of Benjamin B. Barkalow to the other defendants, were to be received as evidence, and would bind the plaintiffs, though made in their absence, and without their knowledge or procurement.
. During the progress of the trial, the defendants offered in evidence statements made by said Benjamin to his mother and sister, and perhaps some of the other heirs, but not in the presence of the plaintiffs or their assignor, and without *473 proof of authority from them or either of them to make such statements, to the effect, that he had been guilty of a penitentiary offense in giving said warehouse receipts, and that nothing would save him but their signing the papers to the plaintiffs, prepared for them. To the introduction of which testimony the plaintiffs, by their counsel, objected; but the court overruled the objection, and permitted the testimony to go to the jury. After the testimony was closed, no evidence having been given that such statements had been in any way authorized or directed by the said plaintiffs or their assignor, the counsel for the plaintiffs requested the court to charge the jury, “.that the statements of Benjamin B. Barkalow to Amy Barkalow, or any other of the defendants, are not evidence against the plaintiffs, unless made in their presence, or in the presence of some one of them, or of Ingraham, or unless by the authority or directipn of the plaintiffs or Ingraham ;” which charge the court declined to give, as asked, but did charge upon that point, “that the statements of Benjamin B. Barkalow to his co-defendants, not made in the presence of the plaintiffs, or Ingraham, are not evidence that the facts stated by him are true. But if the jury find that the plaintiffs, or Ingraham, did make such charges and threats to Benjamin B. Barkalow as he communicated to his co-defendants, then his statements to his co-defendants are just as much evidence against the plaintiffs as if made in their presence, or by their authority.” To which the plaintiffs also excepted.
First, as to the admission of the statements of Benjamin B. Barkalow to his mother and sister, that the plaintiffs had threatened to prosecute him for a penitentiary offense, unless the notes and mortgages to the plaintiffs were executed.
Courts do not generally interfere with the order of the testimony, but leave the counsel managing a cause, to pursue their own order in its production. This rule is oftentimes prejudicial to the party against whom the irrelevant testimony has been received, as notwithstanding the charge of the court to disregard it, and the efforts of the jurors to obey, it must have some effect upon their deliberations. But the rule itself, *474 we think, should be limited to cases where the objection to the testimony relates merely to its relevancy to the issue, and not extended to cases where the objection is its legal incompe* tency to prove the fact. In the one case there is a fact proved which subsequent developments may show to be relevant to the issue, but in the other, there has been no legal proof of the fact itself, and when made relevant, would still be incompetent. In the case at bar, the proof offered was not that the •plaintiffs had threatened to prosecute unless the papers were executed. Such proof, if offered, would have been relevant to the issue, because it would, in some degree, have tended to prove the issue — the agreement not to prosecute; but it was mere hearsay — a statement, not under oath, of a third person, that they had made such threats. It is true, that this objection might have been removed by proof showing that Benjamin B. Barkalow had authority from the plaintiffs to make such statement to them; but the testimony offered, without such proof of authority, did not legally establish the fact that such threats had been made, and we think that the rule, of doubtful policy at best, should not be extended to cases of this description.
We think, therefore, that the proof offered of the statements of Benjamin B. Barkalow, being apparently mere hearsay, and, prima facie, not competent evidence of a fact, should not have been admitted without proof of authority from the plaintiffs, or their assignor, to make them.
But, if wrong in this, the testimony should have been ruled out entirely when the testimony was closed, and the court was asked to do so. No proof of any such authority had been given, and the charge given, as well as the charge solicited, assumes that there was no such proof. The judge admits, in his charge, that “it is not evidence that the facts stated by him are true j” and yet refuses to withdraw it from the jury. In the view taken of the statement by the judge, it amounted merely to proof that Barkalow had made such statement, but without any authority from the plaintiffs to do so. This fact, if at all material to the issue, was admitted by the pleadings, having been alleged in the answer, and not denied in the *475 reply, and. was, therefore, unnecessary to be proved. The defense set up by the now defendants, as the sureties of Benjamin B. Barkalow, was, that the notes and mortgages were void, because they were given in consideration of an agreement between their principal and the plaintiffs, to compromise a criminal prosecution. If this is true, the defense is complete, whether known or unknown to the sureties at the time they executed the papers, their liability being subordinate to their principal. The testimony, therefore, could not, in any view, legally benefit the defendants, while its introduction might, as we shall see hereafter, seriously prejudice the plaintiffs. In was mere hearsay, and should have been rejected in the first instance, and ruled out in the second. The charges and threats said to have been made by the plaintiffs to Barkalow, were relevant to the issue so far only as they tended to prove an agreement for stifling the prosecution; and, while the court instructed the jury that his statements to his co-defendants were not evidence that the facts stated by him were true, it also said to them, that if they found that the plaintiffs did make such charges and threats as he had communicated to his co-defendants, then the statements were as much evidence against the plaintiffs as if made in their presence or by their authority. The jury were thus permitted to couple facts based upon competent evidence with mere hearsay testimony, in order to deduce therefrom the agreement. There was evidence aliunde tending to prove such threats, etc., and how far the hearsay testimony may have contributed to the finding of the agreement, it is impossible for us to say; but it is not unreasonable to suppose it may have aided in some degree.
Courts will not reverse a judgment merely because improper or irrelevant testimony has been received, if there is no reason to apprehend that the improper or irrelevant testimony could have had any influence upon the jury. Baddington v. Shearer, 22 Pick. 427; Ellis v. Short, 21 Pick. 142. But if there is any reason to apprehend that it may have had such influence, courts should do so. See cases supra, and Thompson v. Lothrop, 21 Pick, 340.
The testimony before the jury, offered to prove and disprove *476 the making of the agreement to stifle the prosecution, was very conflicting; that on the. part of the defendants ' was mainly inferential, while the plaintiffs, and their assignor, positively denied it, and the threats from which it was sought to be inferred. The question was, therefore, peculiarly within the province of the jury, and entirely dependent upon the credit and effect they might give to the contradictory statements. Under the charge of the court, proof having been adduced that the plaintiffs had made conditional threats to Barkalow, they were permitted to regard his statements to his co-defendants as testimony against the plaintiffs. The only issue presented to them was, whether an agreement was made to stifle the criminal prosecution, in consideration of said notes and mortgages; and the statements of Barkalow, if competent evidence against the plaintiffs, tended to establish that issue. Whether they were considered by the jury, and contributed to the result at which they arrived, it is impossible for us to say; we only know that the statements were not competent testimony as against the plaintiffs, and may have influenced the verdict. Eor aught we know, these statements may, in the estimate of the jury, have given preponderance to the testimony in support of the agreement.
We are, therefore, clearly of the opinion that the district court erred in admitting proof of the statements of Benjamin B. Barkalow to his co-defendants, and also, in refusing to instruct the jury, as requested, in regard to those statements, as well as in the instructions given respecting them.
The result to which we have come, renders it unnecessary for us to examine the other points mooted by counsel for the plaintiffs, as the judgment, for the reasons assigned, must be reversed, and the cause remanded for further proceedings.
Scott, C.J., and Sutlirr, Gholson, and Brinkerhore, JJ., concurred.